Good afternoon everyone. This is panel K, a panel that originally had an argument scheduled on an earlier date which had to be deferred to today. Before we take up that case, Judge Dyke has motions regarding admissions to the Bar of the Court of Appeals for our court and so I'll preside and Judge Dyke will be a litigant and a litigator again. Sir. Thank you. I have the great pleasure of moving the admission to the Bar of this court of my three current law clerks and they are Jessica Ruth Robinson Houser and she's a member of the Bar of Good Standing of the highest courts of New York, of Washington, of Maryland, and the Fourth Circuit, probably many more to come. Also Gregory Walter Riley, who's a member of the Bar of Good Standing of the highest court in the state of California, and Gabriel Teran, who's a member of the Bar of Good Standing of the highest court of the state of New York. And based on long experience, I'm very satisfied that they possess the necessary qualifications. Thank you, Judge Dyke. The motion is granted without objection. Newly to be admitted attorneys, please stand and face the court. Please raise your right hand if you swear or affirm that you will comport yourselves as attorneys and consulates of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. I do. Congratulations and welcome to the United States Court of Appeals for the Fifth Circuit Bar. I'd like to just mention how pleased we are to have the three of you join the Bar of our court. We hope that we will see you here in the future, not just in the audience, not just at council tables, but in due course at the podium. We look forward to that day. Thank you for your service with us today and continuing service until the respective dates of your departure. Thank you and welcome. I'd just like to second what Chief Judge Michelle said. My congratulations to all of you. You've done a marvelous job this year and I'm sure that as members of the Board, you'll continue to do so. Thank you. Thank you, Mr. Berberle. The sole case for argument this afternoon is in Appeal No. 06-1426, Southerners v. South Carolina Public Service Authority. Good afternoon to you. Welcome. Please proceed and if you would, sir, if I'd like to begin pronouncing your name correctly, can you help me with that? Certainly. Judge Michelle, my name is Timothy Goh from Alston-Newbert for Appellant South Carolina Public Service Authority, and this afternoon I'll be referring to them by their more common name, Santa Cooper. With me at council table is John Hamilton Smith from the Young and Clements Rivers firm in Charleston, South Carolina, who is trial counsel in this case. The issue of this appeal is whether the damages claims that the Santee River landowners have asserted against Santa Cooper, which arise out of the operation of the St. Stephen hydro plant, are really claims against the government over which the Court of Federal Claims rather than the Federal District Court has jurisdiction under the Tucker Act. When you say the government, you mean the United States? The United States, sir. But the complaint only names Santee Cooper, as you choose to call it. Yes. So I don't understand how a complaint that names the sole defendant a state corporate authority somehow is a claim against the United States. It is a claim against the United States because for purposes of the operation of the St. Stephen hydro plant, Santee Cooper was acting as the agent of the Corps of Engineers, that is, the federal government. Well, what if the complaint suggests that although naming a South Carolina agency, the gravamen of the complaint is to ask for money to be paid over to landowners by the U.S. Treasury? I see, for example, in the 93 and 97 complaints that although the Fifth Amendment is mentioned in passing, as I read the relevant part of the complaint, it makes very clear that it's asking not for the U.S. Treasury to pay money but the state of South Carolina to pay money. And it really doesn't depend on the Fifth Amendment. It depends and expressly pleads the Fourteenth Amendment. So how is the Fourteenth Amendment against a state agency suddenly a Fifth Amendment case against the United States? Well, this Court has said on a number of occasions that it is not limited by the pleadings but will look at the true nature of the claim. And furthermore, the party asserting… I mean, that'll help you. I'm not going to dispute with you that on certain occasions courts look past the exact wording of the complaint. But the money that's asked for here has to be paid by South Carolina, not by the United States. So there's no hint there that there's something else other than what the face of the language tells us. Well, I don't think that jurisdiction is determined by where the money comes from. It's who is acting and on whose behalf they're acting. Well, that might be a defense, but that doesn't necessarily bear on jurisdiction. We're not allowed to get into the merits. All we have in front of us, if anything, is the denial of a motion to transfer the case or part of the case, not in clear reading, to the Court of Federal Claims. If that motion was denied by the district judge, we have exclusive jurisdiction to review that denial. That's all we're allowed to review. So the merits and possible defenses are things that we're not permitted to get into. You are permitted, however, to look into the facts that are determinative of jurisdiction. That is what… Well, I'm having the same problem Chief Justice Michel has. I mean, if this were a suit brought against an agent of the United States and the capacity of agent to seek recovery for a taking, it seems to me that you might have a good argument that that's, in effect, a suit against the United States over which the Court of Federal Claims would have exclusive jurisdiction. But I don't read the complaints here as asserting any such claim. And when I look at the post-trial motion decision by the district court, it seems to me that the district court is saying that's not what the claim is here. Even when we got through with trying the case and the evidence was there, even if we look beyond the complaint, it still doesn't seem to be a claim that Santee Cooper is incurred liability because it was acting as an agent of the United States or because it was acting in the direction of the United States. Am I wrong about that? We obviously disagree with what the district court found with respect to whether or not Santee Cooper was acting on behalf of the United States. I will agree that in the order that is the subject of the appeal, the district court found that we were not acting on behalf of the United States, but we submit that is incorrect on the record. But the question that I'm asking is, was there a claim that liability should be imposed on Santee Cooper because it was acting as an agent of the United States? That's what seems to be missing. If there were such a claim, maybe the United States would be the real party in interest in such a case. And maybe there would be an argument for transferring such a claim to the court of federalism. But I don't understand that there has been asserted here a claim against Santee Cooper that it has incurred liability as an agent of the United States. And tell me if I'm wrong, because that seems to me to be an important point. I believe you are incorrect, Judge Dike. Well, then you have to point to some language in the complaint. It can't be pulled out of the air. It's either in the complaint, properly read, or it's not in the case. Well, I disagree that it has to be in the complaint. I submit that for purposes of jurisdiction, the court can look outside the complaint. The district court certainly did when it wrote its opinion denying the motion to transfer. Where in the complaint is there any hint that agency was pleading? The complaint alleges that Santee Cooper effected a taking of plaintiff's property. The question is, if it did so, did it do it on its own behalf, or did it do it on behalf of the federal government? That's the question on the merits. It's not the question before us, I don't think. I believe it is. It's also not what was alleged in the complaint. I understand that under the federal rules, you can in effect have an amendment to the complaint if issues are tried without injection. But I'm still not aware where in the record you're facing a complaint against you seeking recovery because you acted as the agent of the United States. It seems to me that the theory is the exact opposite, that you've incurred liability because you were not the agent of the United States. Well, again, I don't think we can be limited to the complaint, or else to take an example, in the Larson case, the complaint was against an individual, not the United States per se. The court looked through that. In Lyon-Brazens, the complaint was against a non-appropriated fund instrumentality, not against the United States. All that tells us is that if you look past who's on the line as the defendant, it doesn't tell us that you don't need to find something somewhere in the complaint that would support the theory that it's really against someone else. Well, the complaint alleges that there was a taking by virtue of the operation of the St. Stephen power plant. The water comes through the St. Stephen plant, goes down the river, and it's alleged to have flooded the plant's property. That's what the complaint alleges. And the question is, who's operating that plant? Who's legally responsible for operating that plant? That's not our question. Our question is, what claims were presented to the district court? Were any of them well pled, transferable as a matter of law to the claims court? Well, in fact, as we say, as the district court considered, as was stated in the removal petition, which incidentally is the basis of federal jurisdiction, if there is any here, that we were acting on behalf of the United States with regard to the operation of the St. Stephen power plant. Maybe you were, maybe you won't. I don't know. I don't care. I don't need to know. All I need to decide is whether part of this lawsuit or all of it has to be in this building for trial instead of in Charleston. I agree with that. But you're not helping us with that because you're not pointing to evidence or any language in the complaint that would give any support to your theory. I haven't pointed to anything. I have said that the complaint alleges that the damage results from the operation of the St. Stephen. We stated in our removal petition that we were acting on behalf of the United States of America. Which is true and provable might be a very good defense, but it doesn't tell us anything about what the claim is. It's a defense against the claim. It doesn't illuminate what the claim consists of. Well, I think if true, it brings us within the Lyon-Rayson, Larson, and the other cases that we've said. No, it doesn't. Most of those cases deal with somebody who was a secretary of labor or had some significant position as an officer of the federal government and is the only named party in the complaint. And the issue is whether the real party of interest is the United States as a total government because of that official's duties. We don't have that here. The authority is not an officer of the United States. But in all of those cases, the whole purpose of naming the officer as the defendant rather than the government itself was to get around the jurisdiction and the court was willing to look through that. To look to the true purpose of the claim. Sure, because the officer is a cabinet officer of the United States. And it's perfectly obvious from the pleadings that he wasn't on a personal mission. He was carrying out his official duties when he did what's complained of him. Here, we don't have an analog of that that I can see. We have an analog to the Lyon-Rayson case, I submit. You have an entity that is not an employee, a cabinet officer, or a normal – what everyone would agree without question was an agent of the government. You had someone or an entity that for some purposes was an agent, for some purposes wasn't an agent, was not an agent. It could not contract with the government and bind the government. So the court looked through and decided is it in this case, given these allegations, is the defendant acting as an agent of the government? It was just later pointed out that you failed to point to anywhere in the complaint that alleges agency. And I don't think in the Lyon-Rayson case that the determinations were limited to the allegations of the complaint. But we both have the situation strikes me in which it's not the plaintiffs here who are trying to impose liability because of agency. It's you as a defendant that's trying to escape liability by saying we're an agent of the government. Is that not correct? Well, no. There are certain claims on, for example, the negligence claim. We're not contending that we're acting for purposes of the negligence claim as an agent of the United States. Can I clarify? You seem to be saying we're not liable because we're an agent. And the other side is not saying that liability is incurred because you're an agent. They're saying liability is incurred because you're not an agent. Characterization is the conclusion. They're saying you, Sandy Cooper, are liable because you operate the St. Stephen power plant and the water coming out of that plant is flooding our property. The question you have to get to in order to determine whether we're an agent is for purposes of the operation of that plant. What is our role? Are we doing it on our own behalf or are we doing it as an agent of the government? That's the entire question that has to be answered. And we submit that when you look at the legislation that gave rise to this project, the Cooper River Rediversion Project, it's clear that we act with regard to the operation of the St. Stephen plant to enable the federal government to achieve the objectives that were set forth in Senate Document 88, which Congress authorized and approved in the Rivers and Harbors Act of 1968. We are enabling the Corps of Engineers to do and accomplish the objectives that were set forth in that document. And in doing so, I submit, we are acting as an agent of the United States. That may or may not be true as a matter of your proof, your defense. It sounds to me like you're choosing to rewrite the plaintiff's complaint for them. I thought that was a no-no. I thought we had to take the plaintiff's complaint as the plaintiff wrote it. It may be that the plaintiff could have sued in the Court of Federal Claims against the United States as the sole named defendant. Maybe they had that option, but they chose not to do that. They chose to sue in the state court in South Carolina. So we have a lawsuit as they filed it. And as I understand the law, under the well-completed complaint rule, that's what we have to look at. On the day of filing of that complaint, what was the cause of action? I respectfully disagree, Your Honor. I believe that when challenged, the plaintiff has to prove jurisdiction. The law is clear on that. It's just like the plaintiff comes into federal district court, alleges diversity. Does that mean there's diversity and the court doesn't get to look at whether there's really two different citizenships? No. There's no factual dispute that bears on jurisdiction. We're disagreeing about how the complaint should be read. But as best I can understand, you and I are disagreeing about the proper reading of a plaintiff's complaint as filed in this case. I don't believe so. I'm saying that the court is not limited to the complaint in deciding jurisdiction. The court is entitled, indeed, must look to all the evidence to determine whether the allegations support the allegations of the complaint, in fact, support jurisdiction. And in this case, there is evidence that we, Sandy Cooper, with respect to the operation of the St. Stephen plan, were acting as an agent of the government. And that's no different than if, in a diversity case, we came in and said, they allege we're a citizen of Virginia. Here is a stack of evidence that shows we're really a citizen of Maryland. Where is there such a factual dispute in this case? The dispute arises out of the obligations imposed by Congress in adopting and authorizing the plan in Senate Document 88. Because in that document, the Corps of Engineers came up with a specific operating plan for the St. Stephen plan. They said that it would operate as a peaking facility, that it would release water between 0 and 24,500 cubic feet per second, and that when it released at the upper end of that range, that there would be increased flood flow in the river. And when we, even if you assume that Sandy Cooper operates the plant as they allege, all we're doing is carrying out the plan that the Corps developed and that Congress adopted and authorized in the statute. And if that's so, as it may well be, the federal government is probably going to owe you a lot of money if you are ordered at the damages phase to pay the landowners a lot of money. But I don't see what that has to do with which court this lawsuit belongs in. Well, it shows, I believe, that because we are enabling the federal government, the Corps of Engineers, to carry out the mission set forth in the congressionally authorized plan, we are acting for the United States. We are acting as its agent. And if we are, I should respectfully submit, that under the Lyon-Raisins case, the Court of Federal Claims has jurisdiction over the claims of the plaintiffs because they are takings claims against the United States government. Even if there is a claim that's a takings claim against the United States government, there are other claims in this lawsuit that are distinctly common law or South Carolina statutory or South Carolina constitutional claims. But you seem to talk as if the entire case belongs only in the Court of Federal Claims and not as to any claim in the district court in Charleston. How can that be? Well, I've tried to make clear that this is an negligence claim. We are not claiming that we are acting as an agent of the federal government. That claim arises out of the releases of water from the Wilson Dam, which we operate under our first lessons. So if the plaintiffs want to have the district court... The issue is aren't there state law claims in this case? Yes. And you're not answering the question by talking about how you don't contest something that happened on the negligence side of the case. There remain state claims. Yes. So what are you saying? That the district judge had no discretion but was required to sever the case into two parts and transfer one part, the takings under the Fifth Amendment against the federal government part, to the Court of Federal Claims and then retaining the state claim in district court in Charleston? Is that what you're saying? I'm saying that he should have transferred the takings claims and the trespass claim, which we submit is under the Supreme Court's Dugan v. Rand case, just another takings claim. Those two claims should have been transferred. And then the remaining claims would stay in district court in Charleston. Correct. So you're, in effect, if I understand you saying, that the law required him to cut this case in half and send half of it to Washington and keep the other half down there. Would you like to comment on that? Yes. Do you want to stay at your remote time? Yes, please. Thank you, Mr. Taylor. Thank you. Mr. Bell. Good afternoon, Your Honor. Thank you for coming to me a couple of weeks ago and rescheduling this hearing. What you just asked, Mr. Goad, may be further asked with this following question. Would you also agree that the damages from the St. Stephen plant be severed from the damages from the Wilson Dam? Because the damages for the taking from the Wilson Dam are clearly non-federal in any idea. You know, we have cases which hold that a transfer motion under 1631 can be granted as to some of the claims, but not all. I see. So the question is, is there a claim here that would be within the jurisdiction of the court that often is not within the jurisdiction of the district court? And it strikes me that the significant question is whether you are asserting in this case the Fifth Amendment case. Let me be clear what I mean by that. Well, the 14th Amendment claim against the state entity based on incorporation of the Fifth Amendment from a direct Fifth Amendment claim, which can only be asserted against the United States. Are you asserting against Santee Cooper a Fifth Amendment takings claim? I'm asserting against Santee Cooper a state takings claim authorized by South Carolina statute, which gives the South Carolina Public Service Authority its own independent eminent domain. Okay, I understand that. But are – excuse me to answer my exact question. Are you asserting in the way I've defined it a Fifth Amendment takings claim? I don't know how to answer that and be honest with you. I have to think about that. But the fact is – I think it's a very important question. Because I think if a suit were brought against a private entity, for example, alleging that they were acting as agent of the United States and that acting as agent of the United States they had committed a taking, it strikes me that there's a pretty good argument that a claim like that would be within the exclusive jurisdiction of the court of federal claims. But like Chief Judge Michel, I've read the complaint here and I don't see any such claim being alleged here. I've read the decision on the first trial motion. I don't see the judge suggesting that there's such a claim here. And it would help me if you could answer my question as to whether there is such a claim. There is not such a claim, Your Honor. Okay, thank you. May I ask the court to allow me to refer the court to page 455A of the Volume 3 of the corrective appendix? This, Your Honor, is the ruling by the Contract Board of Appeals. And it strikes me as not odd but a little different that counsel wants to characterize the damages or the taking, if you will, only related to St. Stephen's. Having stood on the banks of the Santee River in 1985 and 1987 and watched these floods, it's easy for me to see how someone not familiar with this system can be confused. However, the Wilson Dam, which is a separate outlet of water, and the St. Stephen's Power Plant have two totally different kinds of floods. One is a slow rise of a small amount of water through the hydro plant. The other are 15- and 20-foot-high waves of water coming down this river and to where people's houses are completely subsumed by the spilling of water by the Wilson Dam. Has the Wilson Dam fed into the Cooper River, not the Santee? No, Your Honor. The Wilson Dam was the original dam built in 1942. It blocked the Santee River. The first lake, the upper lake, then feeds the water, hits the dam and flows into the lower lake where the Jeffrey Dam is located. Originally, that water all fed down into the Cooper River, the Charles River. A minor amount of water came down the Santee to keep the fish and keep the river flowing. But the dam itself is a separate kind of flood. It causes flooding along the banks of the Santee River. It does. In a different area, in a different way, in a different kind of flood. In the trial, it's amazing. I'll never forget the question. We have a rabbit at the top of a 20-foot pine tree that's alive that floated up there in one of these Wilson spills. I asked the witness, is a rabbit a tree-climbing animal? Judge Duffy thought that was kind of funny, but we got the point made. You don't get up there by climbing the tree. You get up there because of this huge flood, not caused by St. Stephen's. Counsel wants to forget that. We're talking about a state claim here. We're talking about—and they asked this one, Judge. Let's assume we got them removed to federal court based on their allegation that they were agents. If somewhere along the line they were determined not to be agents, does that mean that there's no jurisdiction in the district court? Certainly not. So your claims are limited here to a state court claim. That's one. It's trespass and negligence. Negligence is part of the check, right? That's correct. And second, you have a claim under the state constitution for a taking. That's correct. That's correct. And you have a claim that the 14th Amendment imposes taking as liability on Santee because acting pursuant to state law, not federal, to state law— Special section. —it has engaged in the taking. That's correct. And you are not alleging that they have incurred liability by acting pursuant to federal law. That's correct. Counsel, in his brief, talks about these cases, and he mixes up a case that talks about immunity. Look at Yearsley, for example. There's no question the U.S. Supreme Court said that Yearsley was acting on behalf of the government. They had that defense. But remember, it was the district court that made those decisions. They never said that immunity turns into no jurisdiction. Clearly, Judge Duffy in the lower court has made the decision based on jurisdiction. He denied this motion for intervention. This court denied my motion to dismiss the appeal based on the issue that this court doesn't have jurisdiction to decide the issue before it. Quite frankly, technically, there's never been a motion for transfer. But I think Judge Duffy has, in essence, ruled what the jurisdiction was, and in so doing, he's saying, in essence, there can be no transfer. Now, the next question is, is the federal government the real party in interest? If you read—and I hate to keep going back to this— the South Carolina Public Service Authority, in their effort to get repaid over half a million dollars in legal fees, went before the board of appeals, contract board of appeals, and the ruling was, in essence, this. You get repaid if you got damages from St. Stephens based on the paragraph 9 in the contract, but if it came from the Wilson Dam, you don't get repaid. So how does that, in essence, say that we as a plaintiff, when we go back, can't prove that this damage comes from the Wilson Dam or the St. Stephens? It doesn't make any difference, does it? Because the fact that the United States might be liable under an amnesty doesn't make a claim against the United States. Exactly right. Anything further? I might add this, Judge. Santee Cooper makes a lot of hullabaloo about their winning the negligence claim. Please remember, we are actually still in the middle of our trial. Although we're 10 years late in getting our damage hearing, we still have the right to appeal that ruling. But if there's not a single case that I'm aware of in the entire United States that says they jury-verdict, can ifso factors say, oh, there's no jurisdiction? I don't think we've ever heard that before. Thank you very much. Thank you. Mr. Nelson? You may appease the court. This appeal raises the simple question of whether plaintiffs' claims solely against Santee Cooper as a government contractor are claims against the United States. Well, the line that you're drawing, I have a lot of questions about that, whether it's just a simple line between damage and injunctive relief. I mean, if somebody sued the Secretary of the Army in federal district court with a million-dollar claim for breach of contract, wouldn't you be claiming that that breach of contract claim belongs in the court of federal claims and ought to be transferred there? Well, if it is a suit against the United States, then that's correct. But you wouldn't traditionally sue an agent for breach of contract. You'd sue the United States for that breach of contract. Well, that's the point. Suppose there were an allegation here, and then you say there isn't, but that Santee Cooper were acting as an agent of the United States, and it incurred liability by acting as an agent of the United States for a case. My understanding of the case law is that under those circumstances, there is not jurisdiction to proceed against the individual, but only jurisdiction to proceed against the United States. The United States would disagree with that. We would say that the proper remedy would be to get that case dismissed, and then if the plaintiff wants to sue the United States, they can bring a subsequent lawsuit against the United States. Why is the plaintiff not supposed to sue against the United States if you're suing an agent saying, you incurred liability for taking an act as an agent of the United States in undertaking the action? Because in suing that individual, you're suing them in their personal capacity. No, no, no. I'm saying the complaint says they're not being sued in their personal capacity. They're being sued as an agent of the United States. That's the sole basis for the complaint. If the suit was for damages and clearly specified that those damages were to come from the United States Treasury, that would be where the damages would come from. They'll say, you have incurred liability because you acted as an agent for the United States. That's not enough. That's not enough. And Larson makes that clear. In Larson, all these cases involve potential agents of the United States. We'd argue in this case that they haven't shown that. But even if it is against an agent of the United States, it's still a defense on the merits, not as to jurisdiction. And there's no case that I'm aware of that has held otherwise. Well, the problem is there is a case in the Fifth Circuit that's characterized as a jurisdictional defense. There's a case in the Ninth Circuit, or maybe two cases in the Ninth Circuit, that say it's a merits defense. It's just not resolved whether, under such circumstances, the defect is jurisdictional or a merits defect. We may not need to decide that in this case, but it's an open question. Well, I think the more important point is that you don't need to decide it in this case. And, you know, in this case, clearly it's money damages that, again— Well, it's not because it's money damages. It's because they are not seeking to recover from the authenticity of the theory that Sanford Cooper was an agent of the United States. They have said they're not trying to recover on that case. That's fine. The United States is happy with a ruling to that effect, and it's definitely true. I mean, Larson makes it pretty clear that— Why are you arguing anything under Larson? Well, why do you need to even get to Larson in order to prevail in this case? Well, I think Larson makes it pretty clear that this case is an easy case. What Larson says is if you're seeking money damages, that's an easy jurisdictional question, and it's not a suit against the United States. You may think it's very clear. I think it's very unclear what Larson really stands for. Well, I think what Larson— I don't understand why you need to even get to Larson. The complaint in this case doesn't charge anything against the United States. Full stop. End of case. Your Honor, we— Why are you going beyond that? Do you want an advisory opinion about what Larson might mean in some other circumstance? No, Your Honor, we— Well, you're going to regret it. We don't seek—we're very content with a ruling that says— Well, the United States does not believe you have to look beyond the caption in most cases. You should double-check. I think it makes sense to double-check and make sure that there's not some aspect of the complaint that really does go against the United States. But in the case—that's why the Lion-Raising case is so distinguishable from what's going on here, is because there the plaintiffs did sue the United States. They named the United States, and they brought it into court a federal plaintiff. And plaintiffs in this case could have done that, but they didn't do that. They sought a claim—claims against Sandy Cooper in their personal capacity as operators of the dam. And their whole theory—the whole theory of their case was that Sandy Cooper was acting on its own discretion and making these determinations when to release water. Mr. Nelson, do you think that you're a proper party to this appeal? We—the—that's a good question, Your Honor. We are—we did withdraw our appeal. So you're not an appellant. We're not an appellant. But the question really is, are you a proper appellee? We would take the position that we are an appellee because it was our motion from which Sandy Cooper seeks to appeal. So we would be an appellee. In some—in some respect, Your Honor, we are a bit akin to an amicus in this case. We clearly have an interest in how this court defines claims against the United States under the Tucker Act. But you sought to intervene. We did. And that was denied. That was denied. And I would have thought that the moment that that was denied, the follow-on motion to transfer would become moot. You're not in the case. Therefore, your motion to do anything is also not in the case. And, therefore, it's not at all clear to me that you belong in this appeal. Now, I think that agents of our court denominated you as an appellee and so informed you. And, of course, you filed a brief, which is empirically improper. We could hardly reject a brief, and we, in effect, asked for it. But whether an agent of the court did something or didn't do something doesn't, in the end, define the court as to who is properly in the case. So I'm very interested in your view. And let me ask you a different question. We have before us a brief written by Matthew J. Sanders, who's described as an environmental division appellate section attorney. Correct. I can't find anywhere in any of the briefs your name, Ryan D. Nelson. So I'd be interested in knowing who are you and where are you from. Your Honor, I'm Ryan Nelson. I'm actually the deputy assistant attorney general over the environment division. So you're not in the appellate section. You're hired in it. You're the boss of the appellate section. In one sense, Your Honor, that's correct. I oversee the appellate section. And other sections as well? I have overseen other sections. Do you normally argue appeals assigned to your section? I have argued other appeals that have been assigned to this section. I've also written other briefs. Good for you for being able to wear several hats. Thank you, Your Honor. I think, you know, we want to make clear that the United States does believe that the monetary damages claim here is dispositive. And we also want to make clear that nothing that either the indemnity agreement or in the Senate document number 88 changes that fact. We point out with regard to the indemnity agreement that only Congress has the authority to waive sovereign immunity. So regardless of whatever effect the indemnity agreement may have or may not have, it's really irrelevant to the question at hand here. And with regard to Senate document number 88, there's nothing in there by which Congress waived sovereign immunity or suggested that the United States would be the real party of interest in these cases. Now help me out a little bit with how to do this analysis. You seemed to say earlier that, well, you pretty much look at the complaint. And you seem to say, well, you just look at the caption to see who the defendant is. And you say, well, no, maybe you have to go a little bit further than the caption. Well, how much further than the caption do we go? I would say that the caption really should state the case. That's the difference between lying raisins on the one hand where the United States was named and a case. So what if the complaint had pleaded that the authority was acting as an agent of the United States government in everything they did? Again, Your Honor, if they had made that complaint, jurisdiction in South Carolina would have been proper. But Sandy Cooper could have come in and said, which they did do, they made the argument in 1999 that the case should be dismissed because the only proper party was the United States in the court of federal claims. That's exactly the argument. And the appropriate argument should be made here by Sandy Cooper in 1999 after trial. And the judge rejected that and said no. Well, I'm not interested in what happened in 1999. I'm trying to figure out what's supposed to happen in June of 2007. Sure. And I'm looking at the complaint, and you're my guide. You're taking me through the complaint. So you say, look at the caption. That tells you that it's not against the United States. That tells you almost everything you need to know. But look a little bit further. So I'm looking down at elsewhere in the complaint, and I'm saying, Mr. Nelson, I spot here a flat-out clear allegation that the authority was acting as an agent of the United States government. Doesn't that change it? And you seem to be saying no. That's correct, Your Honor. Why is that? Because if they're acting as an agent of the United States. We have to take it as true, right? And maybe false. Sure. But for purposes of jurisdiction, we have to take the allegation as if it's true. I think that's true as to the complaint. Remember, there's been a jury trial, and a jury's actually found. And that's been upheld by the judge on a motion for judgment notwithstanding the verdict. That Sandy Cooper, as they claim, were not acting with any discretion. But they were acting solely as an agent of the United States. So that argument has been rejected. We would argue that's still not enough. No, it's not enough on its own, or it's not enough because, in this case, it was later a jury trial. No, it's not enough on its own. Even if a complaint were drafted in such a way to say that Sandy Cooper was an agent of the United States, everything they did was as an agent of the United States. Even if they asserted a Fifth Amendment takings claim. Even if they asserted a Fifth Amendment takings claim. The United States is not the real party in interest. The United States is not the real party in interest. Now, it may be that… I think you're losing me there. All right. If it claims the Fifth Amendment alone, nothing about the Fourteenth Amendment, it alleges agency, it says there was a taking. It seems to me that that's enough to put it in the Court of Federal Claims right there. Well, Your Honor, the good news is our disagreement doesn't need to be decided in this case. But we would argue it would be a very rare case where a private government contractor would be actually named in the caption, and yet you could have some sort of allegation in the complaint that would make that a claim against the United States. It would have to bear on the U.S. trade laws. Well, what's your authority for saying that? That if there's an inconsistency between the implications of the caption as written and paragraph 99 of the complaint as written, that you prefer the caption and you forget about paragraph 99? Where are you getting that? No. Your Honor, as I said, there are certain circumstances. I'm not aware of any case. I'm not aware of any case where the United States has not been named in the caption, but it has been found to be a claim against the United States. Well, actually, there are some cases. You suggested, Officer. In the old Court of Claims, right? That happened where people sued the wrong party. They sued a private or sued a government official, and the Court of Federal Claims said the United States is a real party. And, as a substantive, they treated it as a real claim against the United States. Well, the United States would disagree with that, and we would say that, in this case, the proper method, if that were true, would be as Santee Cooper tried to do and actually has done again. Remember, Santee Cooper has a motion to dismiss pending that's been stayed in the district court, and it's entirely possible that this case will go back there and their motion to dismiss the case will be revisited by the district court. And that's the problem. What do I have to do with this appeal? Well, really nothing except for the theory here that… What are you saying? All right. Well, Your Honor, our position is that this clearly is not a claim against the United States, and… What makes it so clear? The caption of the case number one, if this court is so inclined and wants to walk through the complaint, you just heard from the plaintiffs here that they are not seeking a Fifth Amendment claim. Are we bound by what they say now or what they said at any other point in time as opposed to what they wrote in the complaint as we would construe it under the well-treated complaint rule? Well, Your Honor, that's why my proposition is so much easier, and we would encourage the court to adopt that. And more importantly, the United States does believe that that's a fundamentally correct position, and it's consistent with how the courts have applied official capacity versus personal capacity lawsuits in another context, that there may well be defenses on that. That's not the issue in this case. It's analogous, Your Honor. Well… We're just pointing it out as analogous. You don't have to go there… Maybe it's analogous to one person's view, but a lot of other people would disagree. It's a very poor analogy. Understood. But the point here, Your Honor, is that this is not a claim against the United States. The caption makes that clear. If you want to go to the complaint, the complaint makes that clear. Nothing in the indemnity agreement, nothing in the Senate document ADA changes that fact. We would ask that this court affirm the district court. Do you think it's per se in the law that naming anybody other than the United States is fatal to a transfer to the Court of Federal Claims of the Fifth Amendment case? Again, I think there may be a hypothetical situation. How about the years of the case? That wasn't hypothetical. It was a real case. Well, exactly, but that proves our point. How does that prove your point? It proves our point because it wasn't a jurisdictional question. It was a question on the merits. It was an affirmative defense of government contractors. Where does Hearsley say it's a merits question? I don't think Hearsley is clear about that, is he? Oh, no. Hearsley is very clear about that. Hearsley did not – the Supreme – that case came up through – not through the Federal Circuit, but through – I can't – I want to say the Eighth Circuit. I might be wrong about that. And the question before the Supreme Court was is the defendant entitled to government contractor immunity? And the – actually, and the Supreme Court said they are entitled to government contractor immunity and dismissed the claim on the merits as an affirmative defense, but not – the Supreme Court never suggested in that case that the courts below lacked jurisdiction to decide that. So Hearsley is fully consistent with our argument. So that – I mean, you know, like I say, there may be some case out there, some hypothetical case, which we're not aware of, where a claim could get past the caption in some way and actually lead a claim against the United States, but it would be a rare case. This is not one of them. And like I say, the United States – Are you abandoning the idea that we just look to the relief and if it doesn't request injunctive relief, it per se can't be against the United States? No. That is – that is the rule that the United States is advancing in this case. All right. If there's no further questions, we ask for affirmative. Thank you. Thank you. Mr. Goh, you have two minutes for rebuttal. I begin by quoting from this court's decision in Pink v. United States, 446 F. 3rd, 1307. Quote, a party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists. That's not an issue. And no one in this room disagrees with that proposition. That's not what we have to decide. I submit respectfully that the burden cannot be met just by allegations on the face of the complaint, because if that were the rule, you would see parties begin to artfully plead. You'd see more and more of the yearsly type cases where it really was a takings claim against the United States, but someone tries to artfully plead a different defendant to avoid that result. This is rebuttal, so you're supposed to be directing your argument to countering anything that the two opposing counsel have said that you didn't already cover in your main argument. It's not a second chance to present your main argument, to cover anything that came up that's new and different that you hadn't already covered. The one point that I would just underscore on that point, Your Honor, that is we agree with Judge Dyke that it is far from clear that whether a yearsly is a jurisdictional case or on the merits. The Supreme Court did say that in that case, where there was an alleged taking by the contractor, quote, the government has afforded a remedy for its recovery by suiting the court of claims, unquote. And that's at page 309 U.S. 21. And that suggests, at least, that the claim is while nominally against the contractor, in fact, against the United States and to be brought jurisdictionally in the court of claims. All right. We thank all three counsel. The panelists that announced earlier today consists of myself, Judge Dyke, whom you've, of course, seen, but also Judge Mayer, who could not be here. But, of course, he studied the briefs and the record and will have access to the digital audio recording of this argument. So we'll take the case on your part.